**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| REGINA MERCEDES GUYTON, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 25-4871 |
| SOUTHERN LAND CO., et al., | |
| *Defendants.* | |

**Pappert, J.**                                                          **April 15, 2026**

<u>**MEMORANDUM**</u>

For the past eight months, *pro se* plaintiff Regina Mercedes Guyton has tried, unsuccessfully, to state claims against Southern Land Company related to a purported multimillion-dollar real estate transaction in Philadelphia.  After moving twice to proceed *in forma pauperis* despite supposedly having millions to spend on a property in Rittenhouse Square,[1] she paid the filing fee and amended her complaint.  The Court dismissed that pleading for lack of subject matter jurisdiction and allowed her to file a second amended complaint that included all bases for her claims, reminding her that claims not included would not be considered part of this case.

---

[1]        Guyton filed this action on August 22, 2025 and submitted a check for the $405 filing fee. (Dkt. Nos. 1–2.)  The check bounced a few days later because the account upon which it was written had been closed.  The Court then directed her to pay the filing fee or seek leave to proceed *in forma pauperis*. (Sep. 3, 2025 Order, Dkt. No. 6.)  Guyton did the latter, (First App. to Proceed IFP, Dkt. No. 7), and claimed—under penalty of perjury—to having no monthly income over the past year, no gross monthly pay over the past two years, no other forms of income, no information about assets, and various expenses for food and clothing.

The Court denied the application for lack of sufficient financial information.  (Sep. 23, 2025 Order, Dkt. No. 8.)  Guyton tried again, this time claiming $300.00 in monthly income and $958.77 in gross monthly pay.  (Second App. to Proceed IFP at 1, 2, Dkt. No. 7.)  The Court granted her application, (Oct. 1, 2025 Order, Dkt. No. 11), but, after she alleged having funds sufficient to buy a multimillion-dollar condominium, directed her to show cause why her *in forma pauperis* status should not be revoked, (Dec. 11, 2025 Order ¶ 4, Dkt. No. 32.)  Rather than doing so, Guyton paid the filing fee.  (Dkt. No. 34.)

1

On March 30, 2026, Guyton filed her Second Amendment Complaint in which she accused Southern Land and unnamed individual defendants of discrimination under the Fair Housing Act, promissory estoppel, negligence, and unjust enrichment. The defendants moved to dismiss for lack of subject matter jurisdiction and failure to state claims upon which relief can be granted.  They also suggested Guyton had misrepresented her finances or submitted fraudulent financial documents to the Court, either of which would potentially be sanctionable under Federal Rule of Civil Procedure 11, not to mention a crime under federal and state law.  The Court grants the motion and dismisses all claims without prejudice.

I

The Second Amended Complaint has few factual allegations, refers to "Defendants" generally without specifying which defendant is responsible for which acts or omissions, and never says who the "individual defendants" are.  (Second Am. Compl. ("SAC") ¶¶ 10–11, 13–14, 18B, 18D, Dkt. No. 40); *see also Bartol v. Barrowclough*, 251 F. Supp. 855, 859 (E.D. Pa. 2017) (dismissing under Federal Rule of Civil Procedure 8(a) for failing to provide defendants with notice of the claims against them).  Although the prior pleadings have more factual detail, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam).

From what the Court can discern, Guyton is a woman of color[2] who purportedly "engaged" in a real estate transaction with Southern Land Company "valued at

---

[2]    Guyton alleges she is "a member of protected classes including color, sex (female), and religion," (SAC ¶ 12), but does not say which race or religion.

approximately $3,100,000." (SAC ¶¶ 8, 12.)  She paid a reservation fee, $266,000 in

"tax-related payments," and "additional funds toward the purchase price and

upgrades." (*Id.* ¶ 18A.)  The transaction fell through for reasons unknown, and the

defendants told her they had sent back the funds. *See* (*Id.* ¶¶ 14, 18B).  Guyton claims

they sent them to an address she cannot access. *See* (*Id.* ¶¶ 15–16, 18B.)

II

The defendants first argue the Court lacks subject matter jurisdiction, but that

is incorrect.  Federal courts have a "continuing obligation to investigate their

jurisdiction over the matters before them." *Golden ex rel. Golden v. Golden*, 382 F.3d

348, 354 (3d Cir. 2004).  A plaintiff can do so by pleading either federal question or

diversity jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552

(2005) (citing 28 U.S.C. §§ 1331–32).

The Court has federal question jurisdiction over the case.  Federal district courts

have original subject matter jurisdiction "in all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A case "arises

under federal law when federal law creates the cause of action asserted." *Gunn v.*

*Minton*, 568 U.S. 251, 257 (2013).  Guyton alleges Defendants violated the FHA, (SAC

¶¶ 19–21), and the Court has supplemental jurisdiction over the remaining state law

claims because they are part of the same case or controversy, *see* 28 U.S.C. § 1367(a).

The defendants dispute jurisdiction because they argue Guyton fails to state a

claim under the FHA, *see* (Def.'s Mem. of L. in Supp. of Mot. at 4–5, Dkt. No. 41-1), but

the Third Circuit Court of Appeals has "repeatedly cautioned against allowing a Rule

12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an

attack on the merits," *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016). The Court can dismiss for want of jurisdiction where the alleged claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Guyton provides scarce factual detail with respect to her FHA claim, *see* (SAC ¶¶ 8, 12, 14, 18A), but the Court cannot say her claims—although largely conclusory—are completely devoid of merit as not to involve a federal controversy, *see Hill v. Cohen*, 40 F.4th 101, 111 (3d Cir. 2022) (applying the standard in "very limited circumstances" and describing the bar as "especially high").

## III

The defendants next move to dismiss under Federal Rule of Civil Procedure 12(b)(6), which provides that a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

4

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim."  *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint.  *Twombly*, 550 U.S. at 570.[3]

IV

The FHA prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  A plaintiff may allege that a defendant was either motivated by intentional discrimination or that the action had a discriminatory effect.  *Doe v. City of Butler*, 892 F.2d 315, 323 (3d Cir. 1989).  A claim for intentional discrimination may be alleged through direct or indirect evidence.  *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998).  Guyton alleges only that the defendants discriminated against

---

[3]   Guyton submitted a declaration the day after Defendants moved to dismiss her claims, (Decl. of Regina Mercedes Guyton, Dkt. No. 42), but at this stage "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record," *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

her based on protected characteristics and treated her "differently than similarly situated individuals." (SAC ¶¶ 13, 19.)

She also asserts a claim under 42 U.S.C. § 3617, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right protected by section 3603, 3604, 3605, or 3606 of this title." Regulations prohibit doing so because of sex, race, or religion. 24 C.F.R. § 100.400(c)(2). Guyton does not allege any defendant did any of that.

V

Nor does Guyton state a claim for promissory estoppel. To do so, she must allege: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee, (2) the promisee actually took action or refrained from taking action in reliance on the promise and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (citation modified). Pennsylvania courts "strictly enforce" these elements "to guard against the 'loose application' of promissory estoppel." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009) (citation modified) (quoting *Fried v. Fisher*, 196 A. 39, 43 (Pa. 1938)).

Guyton fails to plausibly allege any element. First, she contends the defendants "initially engaged" in a multimillion-dollar transaction with her and "represented" that her funds had been returned. *See* (SAC ¶¶ 10, 14). But "broad and vague implied promise[s]" do not suffice to state a promissory estoppel claim. *See C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988). She alleges no facts about

6

what the defendants told her, nor does she identify an "express promise" Southern Land or any of its representatives made to her.  *See id.*; *see also Holewinski v. Child.'s Hosp. of Pittsburgh,* 649 A.2d 712, 714 (Pa. 1994) (dismissing complaint where it was "bereft of any allegation of a promise"); *MRO Corp. v. Humana, Inc.*, 383 F. Supp. 3d 417, 423 (E.D. Pa. 2019) ("To qualify as an express promise, courts have held that the promise must indicate with 'reasonable certainty' the intent of the parties." (footnote omitted)).

Second, Guyton apparently sent the defendants "financial instruments" after they engaged with her, *see* (SAC ¶¶ 8, 10, 14, 18A), but those allegations are "bereft" of reliance on a promise, *see Holewinski*, 649 A.2d at 714.  In any event, none of her purported actions imply "a substantial change of position."  *See Kaufman v. Mellon Nat'l Bank & Tr. Co.,* 366 F.2d 326, 332 (3d Cir. 1966); *see also K7 Design Grp., Inc. v. Five Below, Inc.*, 540 F. Supp. 3d 508, 513 (E.D. Pa. 2021) (finding reliance where the plaintiff manufactured 600,000 units of hand sanitizer based on the defendant's express promise); *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 475 (E.D. Pa. 2019) (finding reliance where the plaintiff bought a new house based on the defendant's express promise).

Third, Guyton does not indicate how injustice can only be avoided by enforcing the promise.

## VI

Under Pennsylvania law, negligence requires: "(1) the defendant has a legal duty to conform to a certain standard of care to prevent unreasonable risks to the plaintiff, (2) the defendant's conduct breached that duty, (3) the breach caused an injury to the

plaintiff, and (4) the injury resulted in actual losses or damages." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 227 (3d Cir. 2020) (citation modified) (citing *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).

Guyton never points to a cognizable duty the defendants owed her. *See Campo v. St. Luke's Hosp.*, 755 A.2d 20, 23–24 (Pa. Super. Ct. 2000) ("[U]nless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." (citation omitted)); *see also Logan v. Salem Baptist Church of Jenkintown*, No. 10-cv-144, 2010 WL 3364203, at *7 (E.D. Pa. Aug. 17, 2010) (dismissing complaint for "fail[ing] to state a cognizable duty"). She also claims damages for "financial loss, lost opportunity, emotional distress, and inability to access and recover transaction-related funds and instruments," *see* (SAC ¶ 29), but "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage," *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 222 (3d Cir. 2010) (quoting *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)).

## VII

Finally, unjust enrichment involves "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (citation omitted). To state a claim, the plaintiff must allege: (1) she "conferred benefits on the defendant," (2) the defendant "appreciated such benefits" and (3) "the benefits were accepted and retained under such circumstances that it would be inequitable for

the defendant to retain the benefit without the payment of value." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 412 (E.D. Pa. 2023) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)).

Guyton fails to allege facts to satisfy any of the elements of this claim.  First, she purportedly paid a reservation fee, $266,000 in "tax-related payments," and "additional funds toward the purchase price and upgrades . .  in connection with the subject transaction." *See* (SAC ¶ 18A).  But it's not clear who received those payments, how much the reservation fee or additional funds were, or how the defendants benefited from her tax-related payments. *Morlok v. City of Philadelphia*, No. 20-2973, 2022 WL 252185, at *5 (3d Cir. Jan. 26, 2022) ("[U]njust enrichment claims cannot be based on 'speculative' or 'intangible' benefits." (citation omitted)).

Second, Guyton does not allege the defendants appreciated those benefits; to the contrary, they purportedly returned them.  (SAC ¶¶ 14, 18B.)

Third, she does not allege how it would be inequitable for the defendants to retain the purported benefits she conferred upon them.

## VIII

Courts should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).  The Court has serious concerns that Guyton can cure the deficiencies in her claims.  But because the Court has not yet addressed the merits of her pleadings, she may amend her claims—

one last time—consistent with this Memorandum and to the extent she can allege facts sufficient to state a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

10